UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL F. ELDRIDGE, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> ETHAN ALLEN, INC. ) <br> ) <br> *Defendant*. ) <br> ) | CIVIL ACTION <br> NO. 04-12506-MEL |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant Ethan Allen Inc. ("Ethan Allen") hereby submits this Memorandum of Law in Support of its Motion to Dismiss in the above-captioned matter.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

For purposes of this Motion only, the facts as alleged by Plaintiff in his Complaint are taken as true. Plaintiff began working for Ethan Allen in 1999 as a truck driver. (Compl. at ¶ 4.) Plaintiff received promotions thereafter, and he most recently held the position of Warehouse Manager. (See id. at ¶ 5.) In July 2003, Plaintiff tore ligaments in both his knees in a non-work related accident. (See id. at ¶ 7.) In addition to tearing ligaments in his knees, Plaintiff alleges that he pulled his back during a furniture delivery on October 20, 2003. (See id. at ¶ 14.) Ethan Allen terminated Plaintiff's employment on October 20, 2003. (See id. at ¶ 15.)

---

[1] Because this Motion presents materials outside the pleading, the Motion should be treated for one as for summary judgment if the materials are not excluded by the Court. See Fed. R. Civ. P. 12(b)(6).

At the time of Plaintiff's termination, the only health care plan offered to Ethan Allen's retail sector employees and their qualified dependents was Anthem Blue Cross/Blue Shield Preferred Provider Organization ("Anthem BC/BS PPO"). (See Affidavit of Cindy Salerno ("Salerno Aff."), attached hereto as Exhibit A, at ¶¶ 3-4.) This health care plan was self-funded by Ethan Allen and administered by Anthem BC/BS. (Salerno Aff. at ¶ 4.) In other words, claims were paid from Ethan Allen's general assets, and the cost of coverage was based on the actual claims experience of the plan and the cost of administration. (Id.) Plaintiff, a retail sector employee, was enrolled in Ethan Allen's self-funded Anthem BC/BS PPO plan at the time of his termination on October 20, 2003. (See id. at ¶ 7.) According to Plaintiff's Complaint, Ethan Allen ended his health insurance coverage the same day that his employment was terminated. (See Compl. at ¶¶ 17, 43.)

On or about November 24, 2004, Plaintiff filed a five-count Complaint against Ethan Allen, in which he asserts the following claims: violation of the Family Medical Leave Act (Count I); handicap discrimination in violation of Mass. Gen. Laws ch. 151B ("Chapter 151B") (Count II); retaliation on the basis of a work-related injury in violation of Mass. Gen. Laws ch. 152, § 75B (Count III); violation of Mass. Gen. Laws ch. 175, § 110D (Count IV); and violation of the overtime provisions of the Massachusetts Minimum Fair Wage Law (Count V).

Ethan Allen now seeks dismissal of Counts IV and V of the Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Specifically, Count IV merits dismissal because Mass. Gen. Laws ch. 175, § 110D, as applied to Ethan Allen's self-funded employee benefits plan, is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Moreover, Plaintiff lacks standing to bring a private action against Ethan Allen to enforce Mass. Gen. Laws ch. 175, § 110D. With respect to Count V, this Court lacks subject

matter jurisdiction because Plaintiff has failed to exhaust his administrative remedies. Accordingly, these claims should be dismissed from this case with prejudice.

## ARGUMENT

I.  Count IV Should Be Dismissed Because Mass. Gen. Laws ch. 175, § 110D Is Pre-Empted by ERISA, and Plaintiff Lacks Standing to Bring a Private Cause of Action.

Mass. Gen. Laws ch. 175, § 110D requires commercial insurers of group health insurance policies to contain a provision in every such policy that, "in the event that the insured person leaves the group covered by such insurance, said person shall remain insured under such policy for a period of thirty-one days thereafter unless, during such period, he shall otherwise be entitled to similar benefits." Id. Plaintiff alleges that Ethan Allen "directed its health insurance carrier to terminate [his] health insurance coverage on the same day his employment terminated, October 20, 2003." (Compl. at ¶¶ 17, 43.) Plaintiff alleges that such conduct constitutes a violation of Mass. Gen. Laws ch. 175, § 110D. Even construing the Complaint in a light most favorable to Plaintiff, Count IV cannot survive dismissal because it is preempted by ERISA. Moreover, Plaintiff lacks standing to bring a cause of action against Ethan Allen.

A.  *Mass. Gen. Laws ch. 175, § 110D, as Applied to the Medical Benefits Plan at Issue, is Preempted by ERISA.*

ERISA generally pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). See also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) (recognizing broad scope and purposes of this statutory provision); Bergin v. Wausau Ins. Cos., 863 F.Supp. 34 (D.Mass. 1994) (finding that a statutory requirement for a self-funded plan to provide continued benefits clearly "relates to" an employee benefit plan). ERISA's "savings clause" restores to the states the power to enforce state laws that regulate insurance. See 29 U.S.C. § 1144(b)(2)(A); Bergin, 863 F.Supp. at 36. However, the

"deemer clause" then limits the scope of this exception by stating that "an employee benefit plan...shall [not] be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts...." See 29 U.S.C. § 1144(b)(2)(B); Bergin, 863 F.Supp. at 36.

Although no court has yet ruled on whether Mass. Gen. Laws ch. 175, § 110D is preempted by ERISA, Bergin v. Wausau Ins. Co. analyzed the issue with respect to Mass. Gen. Laws ch. 175, § 110I. See 863 F.Supp. 34 (D.Mass. 1994). By way of background, Mass. Gen. Laws ch. 175, § 110I provides, in part, that a former spouse of a member of a medical benefits plan must be allowed to continue such benefits without additional premiums. See id. at 36. The plaintiffs in Bergin were former spouses who had to pay additional premiums in order to continue medical benefits for the former wife as required by their divorce agreement. See id. They filed suit seeking a declaratory judgment that Mass. Gen. Laws ch. 175, 110I required the continuation of the former wife's benefits *without* additional premiums. See id.

The Court determined that Mass. Gen. Laws. ch. 175, § 110I may be preempted by ERISA in certain contexts by virtue of the deemer clause. The Court distinguished between "insured" plans on the one hand, and "uninsured" or "self-funded plans" on the other. "State laws that directly regulate insurance are 'saved' but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for the purposes of such laws." Bergin, 863 F.Supp. at 37, quoting FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990). The Court held that the plan at issue was a self-funded one that could not be deemed an insurance contract regulated by the state. See id. at 37-38. Therefore, ERISA preemption applied.

Based on the reasoning of Bergin v. Wausau Ins. Co., this Court should similarly conclude that Mass. Gen. Laws ch. 175, § 110D is preempted by ERISA in this case. By its plain language, Mass. Gen. Laws ch. 175, § 110D regulates insurance within the meaning of the savings clause because it requires continued health insurance coverage under group insurance plans. See, e.g., Bergin, 863 F.Supp. at 37 (finding that Mass. Gen. Laws ch. 175, § 110I regulated insurance within the meaning of the savings clause). This provision "directly controls the terms of insurance contracts....It does not merely have an impact on the insurance industry; it is aimed at it." Bergin, 863 F.Supp. at 37, quoting FMC Corp., 498 U.S. at 61. Mass. Gen. Laws ch. 175, § 110D is, therefore, saved from preemption unless it is excluded from the reach of the savings clause by virtue of the deemer clause. See Bergin, 863 F.Supp. at 37. At the time of his termination, Plaintiff received health care benefits through Ethan Allen's self-funded medical benefits plan for employees and their qualified dependents.[2] (See Salerno Aff. at ¶¶ 4, 7.) Consequently, as applied to Ethan Allen's self-funded employee benefits plan, Mass. Gen. Laws ch. 175, § 110D is preempted. See Bergin, 863 F.Supp. at 37-38. For this reason alone, Count IV merits dismissal.

B.  *Plaintiff Lacks Standing to Bring a Claim Under Mass. Gen. Laws ch. 175, § 110D.*

Plaintiff is further precluded from pursuing Count IV because no right exists to bring a private cause of action against Ethan Allen for an alleged violation of Mass. Gen. Laws ch. 175, § 110D. Ethan Allen is unaware of any statutory provision or case granting an individual the right to enforce Mass. Gen. Laws ch. 175, § 110D by filing a civil suit against his or her

---

[2] Ethan Allen purchases separate medical "stop loss" coverage to protect itself from catastrophic losses. (Salerno Aff. at ¶ 6.) In the year 2003, Ethan Allen did not tap into this "stop loss" policy at all, even though approximately 6,480 individuals were enrolled in its self-funded Anthem BC/BS PPO plan. (See id. at ¶¶ 5-6.) Under these circumstances, the fact that Ethan Allen purchases "stop loss" coverage does not convert its health plan into an insured plan or otherwise preclude a finding that it is self-funded. See Bergin, 863 F.Supp. at 37 n.4.

employer. Andrews-Clarke v. Lucent Tech., Inc. further supports Ethan Allen's argument that no private cause of action exists. See 157 F.Supp.2d 93, 106 n.12 (D.Mass. 2001). In that case, the plaintiff asserted a host of claims, including a claim that the defendants had failed to provide mental health care coverage required under certain insurance policies by Mass. Gen. Laws ch. 175, § 47B. See id. The Court held, however, that statutes directed towards the regulation of insurance, which are found in Chapters 174A – 178 of the Massachusetts General Laws, do not create a private cause of action. See id. Because Mass. Gen. Laws ch. 175, § 110D is encompassed by this portion of the Massachusetts General Laws, Plaintiff likewise lacks standing to bring a private cause of action to enforce its provisions. Consequently, Count IV warrants dismissal for this reason as well.

II.   Count V Should Be Dismissed Because Plaintiff Has Failed to Exhaust His Administrative Remedies.

Plaintiff's claim alleging violation of the overtime provisions of the Massachusetts Minimum Fair Wage Law merits dismissal because he has failed to exhaust his administrative remedies. When a plaintiff fails to comply with statutorily created prerequisites, a court lacks jurisdiction to hear the case. See Nissan Motor Corp. in USA v. Commissioner of Revenue, 407 Mass. 153, 157 (1990). Before bringing a civil action for alleged violations of the Minimum Fair Wage Law, the aggrieved individual must first file a complaint with the Office of the Attorney General ("OAG"). See Mass. Gen. Laws ch. 149, § 150; Mass. Gen. Laws ch. 151, § 19. Ninety days after filing a complaint with the OAG (or sooner, if the OAG consents), the employee may bring a civil action. See Mass. Gen. Laws ch. 149, § 150. The purpose of this requirement with respect to alleged violations of Mass. Gen. Laws ch. 149 is to give notice to the OAG, so that it may keep records of allegations against employers and determine whether or not to commence civil or criminal actions. See, e.g., Dunfey v. Primetech Professional Serv., Inc., 2002 WL

388196, *2 (Mass. Sup. Ct., Jan. 4, 2002) (plaintiff alleged that his former employer had failed to pay wages), cited favorably by Nahigian v. Leonard, 233 F.Supp.2d 151, 164-65 (D.Mass. 2002).[3] The OAG is similarly responsible for determining whether or not to commence civil or criminal actions for alleged violations of state overtime requirements under Chapter 151. See Mass. Gen. Laws ch. 149, § 27C. Because Plaintiff has failed to first file a claim for non-payment of overtime wages with the OAG, Count V should be dismissed.[4]

## CONCLUSION

For the foregoing reasons, Defendant Ethan Allen Inc. respectfully requests that this Court allow its Motion to Dismiss with prejudice.

Respectfully submitted,

ETHAN ALLEN INC.,

By its attorneys,

/s/: Heather C. Krauss
Barry A. Guryan, BBO # 214920
Heather Carlson Krauss, BBO # 644457
EPSTEIN, BECKER & GREEN, P.C.
111 Huntington Avenue
Boston, MA 02199
(617) 342-4000

Dated: January 31, 2005

---

[3] A copy of this opinion is attached as Exhibit B.
[4] It should be noted that in addition to this procedural deficiency, Plaintiff's claim is utterly lacking in substantive merit. Plaintiff was a salaried Warehouse Manager at the time of the alleged violation, and he was responsible for supervising the employees working in the Warehouse. As such, he performed work that made him an executive employee exempt from state and federal law overtime requirements. See Mass. Gen. Laws ch. 151, § 1A(3); Code Mass. Regs. tit. 455, § 2.02(3) (instructing that the terms "bona fide executive, or administrative or professional person" in Mass. Gen. Laws ch. 151, § 1(A)(3) shall have the same meaning as set forth under the federal Fair Labor Standards Act regulations).

- 8 -

## CERTIFICATE OF SERVICE

I, Heather Carlson Krauss, hereby certify that on January 31, 2005, a true copy of the foregoing document was served by overnight mail upon counsel for Plaintiff:

Denise A. Chicoine, Esq.
Englander & Chicoine P.C.
Two Newton Place
Suite 200
Newton, MA  02458-1634

/s/: Heather C. Krauss
Heather Carlson Krauss

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL F. ELDRIDGE,

    *Plaintiff,*

v.

ETHAN ALLEN, INC.

    *Defendant.*

CIVIL ACTION
NO. 04-12506-MEL

### AFFIDAVIT OF CINDY SALERNO

I, Cindy Salerno, do hereby depose and state as follows:

1. The contents of this Affidavit are based upon my personal knowledge unless otherwise stated.

2. I have been employed by Ethan Allen Inc. ("Ethan Allen" or "the Company"), in the medical insurance field, since 1994. Since 2004, I have held the position of Manager, Insurance Programs. Throughout my employment with Ethan Allen, I have worked from its office located in Danbury, Connecticut.

3. Ethan Allen offers one health care option to eligible employees working in the Company's retail sector and to their qualified dependents.

4. In 2003, the health care plan offered to these employees and their qualified dependents was Anthem Blue Cross/Blue Shield Preferred Provider Organization ("Anthem BC/BS PPO"). This health care plan was self-funded by Ethan Allen and administered by Anthem BC/BS. In other words, claims were paid from Ethan Allen's general assets, and the

cost of coverage was based on the actual claims experience of the plan and the cost of administration.

5. A total of approximately 6,480 individuals (both employees and their qualified dependents) were enrolled in Ethan Allen's self-funded Anthem BC/BS PPO plan in 2003.

6. Ethan Allen also purchases separate medical "stop loss" coverage to protect itself from catastrophic losses. For the year 2003, the Company's "stop loss" policy included a $200,000 specific deductible, a $115,000 aggregate deductible, and a $1,000,000 specific stop loss maximum reimbursement per individual per year. In the year 2003, Ethan Allen did not make any claims under its "stop loss" policy.

7. Michael Eldridge was employed in Ethan Allen's retail sector throughout his employment with the Company. Ethan Allen's records reveal that Mr. Eldridge was enrolled in Ethan Allen's self-funded Anthem BC/BS PPO plan at the time of his termination on October 20, 2003. Specifically, he had elected family coverage.

Signed under the penalties of perjury this 31st day of January 2005.

                                                 _/s/ Cindy Salerno_
                                                 Cindy Salerno
                                                 Manager, Insurance Programs
                                                 Ethan Allen Inc.

On this 31st day of January 2005, before me, the undersigned notary public, personally appeared _Cindy Salerno_, proved to me through satisfactory evidence of identification, which were _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that she signed it voluntarily for its stated purpose.

_/s/ Maria C. Canhao_
Notary Public
My commission expires:

**MARIA C. CANHAO**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 2005

# Exhibit B



Not Reported in N.E.2d
14 Mass.L.Rptr. 267, 2002 WL 388196 (Mass.Super.)
(Cite as: 2002 WL 388196 (Mass.Super.))

Page 1

C

Superior Court of Massachusetts.

Frederick V. DUNFEY,
v.
PRIMETECH PROFESSIONAL SERVICES,
INC., et al. [FN1]

FN1. John P. Dresser, Jr., in his individual and **professional** capacities, and Steven E. Pichette, in his individual and **professional** capacities.

No. 992306.

Jan. 4, 2002.

MEMORANDUM OF DECISION AND ORDER
ON DEFENDANTS' MOTION TO DISMISS

JULIAN T. HOUSTON, Justice.

*1 The plaintiff filed this action against the defendants alleging violations of the Massachusetts Payment of Wages Statute, G.L.c. 149, § § 149 & 150 (Count I), breach of contract (Count II), and violations of G.L.c. 93A (Count III). The defendants now move to dismiss Count I under Mass.R.Civ.P. 12(b)(1), and Counts II and III under Mass.R.Civ.P. 12(b)(6). For the following reasons, the defendants' motion is ALLOWED in part and DENIED in part.

BACKGROUND
The plaintiff has raised the following allegations in his complaint.

**Primetech** Corporation ("**Primetech**") is a Massachusetts business that has, or had at all times relevant to this decision, an ownership interest in **Primetech Professional** Services ("PPS"). Steven E. Pichette ("Pichette") is, or was at all times relevant to this decision, both the President, Treasurer, and Clerk of **Primetech**, as well as the Treasurer, and involved in the management, of PPS. John P. Dresser, Jr. ("Dresser") is, or was at all times relevant to this decision, both the President of PPS, and involved in the management of **Primetech**.

In May 1997, Dresser informed the plaintiff that he was seeking to hire him as an employee, contingent on **Primetech** obtaining an initial client contract. Dresser also informed the plaintiff that if the contract was obtained, he would collect a salary during the contract's performance. Dresser and the plaintiff agreed that the plaintiff would receive an annual salary of $50,000.00. The parties also agreed that the plaintiff would receive an annual salary of $75,000.00 if **Primetech** "contracted him out" to work with one of its clients.

Subsequent to this agreement, **Primetech** assigned the plaintiff to work with one of its clients, NEAD Trust Company ("NEAD"). In December 1997, Dresser informed the plaintiff that because of his efforts, **Primetech** would grant him a 5% interest in the company. The plaintiff resigned from **Primetech** on June 30, 1998.

In December 1998, the plaintiff filed a Non Payment of Wage Complaint with the Massachusetts Office of the Attorney General ("Attorney General"). Under the heading "EMPLOYER INFORMATION," the plaintiff listed **Primetech** and its business address, as well as Dresser as **Primetech's** "President/Owner" and "Local Manager." The plaintiff alleged that **Primetech**, and Dresser, failed to pay him wages in the amount of $41,346.00. In a letter dated December 21, 1998, the Attorney General granted the plaintiff the authority to commence a civil action for the recovery of such wages.

The plaintiff filed this present action for the recovery of wages under G.L.c. 149, breach of contract, and violations of G.L.c. 93A. In this suit, the plaintiff has named PPS, Dresser, and Pichette as defendants. [FN2] The defendants now move to dismiss Count I under Mass.R.Civ.P. 12(b)(1), and Counts II and III under Mass.R.Civ.P. 12(b)(6).

FN2. The plaintiff originally included Primetech as a defendant, but withdrew his claims against it due to it filing a bankruptcy petition.

DISCUSSION
I. Violations of G.L.c. 149 (Count I)

A motion to dismiss for lack of subject matter jurisdiction based on factual insufficiency of the complaint should be granted where the plaintiff's allegations, even if taken as true, do not establish the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                Page 2
14 Mass.L.Rptr. 267, 2002 WL 388196 (Mass.Super.)
(Cite as: 2002 WL 388196 (Mass.Super.))

Court's jurisdiction to hear the claim. *Ginther v. Commissioner of Insurance*, 427 Mass. 319, 322 n. 6 (1998). When a plaintiff fails to comply with statutorily created prerequisites, a court lacks jurisdiction to hear the case. *Nissan Motor Corp. in USA. v. Commissioner of Revenue*, 407 Mass. 153, 157 (1990).

*2 The defendants argue that this Court does not have jurisdiction over the plaintiff's claim for violations of G.L.c. 149 because the plaintiff failed to include PPS and Pichette in his complaint to the Attorney General. In making this argument, the defendants compare G.L.c. 149's requirement that a plaintiff file a complaint with the Attorney General prior to initiating a civil action with G.L.c. 151B's requirement that a plaintiff file a complaint with the Massachusetts Commission Against Discrimination ("MCAD") prior to commencing a civil action for discrimination. The plaintiff claims that the statutory intent of these two laws are similar in the sense that they both establish procedures by which potential defendants are put on notice and are able to resolve problems before resorting to litigation in a civil action.

While the plaintiff may have properly stated the intent and purpose of MCAD filings, see *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996), it has failed to demonstrate to this Court, by citing to any case, statute, regulation, or otherwise, that the intents of the two statutes are identical. In fact, it appears that under G.L.c. 149 there is no requirement that the Attorney General investigate or attempt to conciliate claims. Instead, the purpose of a complaint under G.L.c. 149 is to give notice to the Attorney General, not potential defendants, so that it may keep records of allegations against employers and determine whether or not to commence civil or criminal actions. Because of this difference, this Court may apply a more lenient standard of scrutiny than that under G.L.c. 151B in evaluating the sufficiency of a G.L.c. 149 complaint.

Even if this Court were to use MCAD filings as an instructive guide, the established standard of determining the sufficiency of such a filing does not require that the plaintiff set forth with "literary exactitude" all of the facts and theories upon which her claim is based. See *Lattimore, 99 F.3d at 464*. A charge that puts a party's conduct at issue and provides her with fair notice and an opportunity to participate in the MCAD proceeding permits that party to be named as a defendant in a later G.L.c. 151B action in court, although she was not specifically identified in the MCAD complaint. See *Chapin v. University of Massachusetts at Lowell*, 977 F.Sup. 72, 76-77 (D.Mass.1997) (analysis of federal actions before the Equal Employment Opportunity Commission). See also *King v. First*, 46 Mass.App.Ct. 372, 374 (1999) (discussing, without expressly adopting, the federal rule that failure to name a party in the administrative complaint does not automatically bar the plaintiff from naming that party in a later court action); *Avitable v. W.M. Gulliksen Mfg. Co., Inc.*, Civ. No. 00-3522A, 12 Mass. L. Rptr. 653 (Mass.Super.Ct. Feb. 20, 2001) (applying the above federal rule in *Chapin, 977 F.Sup. at 72*, as well as similar cases, to Massachusetts discrimination cases and MCAD practice).

*3 Here, the plaintiff sufficiently placed all of the defendants on notice of a potential wage payment suit. He named a Primetech and Dresser on the Attorney General complaint, thus giving notice to these two parties of the potential civil action. His naming of Primetech and Dresser was also sufficient to give notice to PPS. First, Primetech and PPS are closely related through the parent-subsidiary relationship, and it is likely that any adverse legal action taken against one would have an impact on both and would be realized by the other through the ordinary course of diligent business practice. Second, Dresser was involved in the management of both companies, and his knowledge of the complaint through his responsibilities with **Primetech** would carry over to his official capacities with PPS. In short, the Attorney General complaint provided PPS with notice of a potential civil action because of its closely-knit relationship with **Primetech**, including the fact that its officers and employees, especially Dresser, worked for both companies. Therefore, this Court has jurisdiction over PPS.

Pichette is, or was at all relevant times, allegedly involved in the management of both **Primetech** and PPS, and was the Treasurer of both companies. Because both **Primetech** and PPS are proper parties to the civil action, Pichette is an additional individual who is personally responsible for the payment of wages. See G.L.c. 149, § 148. Therefore, this Court has jurisdiction over Pichette. [FN3]

> FN3. This Court also notes that the Attorney General's complaint form does not indicate that a plaintiff list all potential parties to the suit. It only asks for an employer, as well as the manager and president of that employer. It is not unreasonable for a plaintiff, after reading

Not Reported in N.E.2d
14 Mass.L.Rptr. 267, 2002 WL 388196 (Mass.Super.)
(Cite as: 2002 WL 388196 (Mass.Super.))

Page 3

such a form, to include only the minimum necessary information required on the form's face.

II. Breach of Contract (Count II)

When evaluating the sufficiency of a complaint under Mass.R.Civ.P. 12(b)(6), this Court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn from them in the plaintiff's favor. *Quinn v. Walsh,* 49 Mass.App.Ct. 696, 699 (2000); *Fairneny v. Savogran Co.,* 422 Mass. 469, 470 (1996). This Court's analysis "must be based upon an indulgent reading of the complaint, including indulgence for the period of limitations." *Id.;* see *New England Insulation Co. v. General Dynamics Corp.,* 26 Mass.App.Ct. 28, 29 (1988). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader v. Citron,* 372 Mass. 96, 98 (1977). Similarly, a complaint should not be dismissed simply because it asserts a novel or extreme theory of liability or improbable facts. *Jenkins v. Jenkins,* 15 Mass.App.Ct. 934, 934 (1983).

Here, the plaintiff has sufficiently stated a claim for breach of contract. The plaintiff alleges that the parties made representations and promises with respect to his employment, and that they failed to live up to these promises. While the defendants argue that there are problems with the legal sufficiency of the plaintiff's claim, this Court finds that dismissal is not appropriate at this point, as he is entitled to raise novel and unique theories of liability through his pleadings. [FN4] Here, the plaintiff has adequately plead a claim for breach of contract.

> FN4. This Court finds that the defendants' arguments with respect to this count are more appropriate for a motion for summary judgment.

III. Violations of G.L.c. 93A (Count III)

*4 It is firmly established that disputes between employers and employees that stem from the employment relationship fall outside the scope of claims for violations of G.L.c. 93A. *Manning v. Zuckerman,* 388 Mass. 8, 12 (1983); *Informix, Inc. v. Rennell,* 41 Mass.App.Ct. 161, 162-63 (1996). Here, all of the plaintiff's claims stem from his employment relationship with the defendants. This Court, therefore, must dismiss the plaintiff's claim for violations of G.L.c. 93A.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants' motion to dismiss be DENIED as to Counts I and II, and be ALLOWED as to Count III.

14 Mass.L.Rptr. 267, 2002 WL 388196 (Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.