UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL F. ELDRIDGE,          ) <br> ) <br> *Plaintiff*,          ) <br> ) <br> v.          ) <br> ) <br> ETHAN ALLEN, INC.          ) <br> ) <br> *Defendant*.          ) | **MOTION FOR LEAVE TO FILE GRANTED ON <u>OCTOBER 26, 2006</u>** <br><br><br><br><br> CIVIL ACTION <br> NO. 04-12506-MEL |

**DEFENDANT'S MEMORANDUM IN REPLY
TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendant, Ethan Allen, Inc. (now known as "Ethan Allen Retail, Inc.") ("Ethan Allen"),[1] hereby submits the following Memorandum in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition" or "Opp.").

I.  Plaintiff Cannot Establish that his Knee Injury Constituted a Handicap or Perceived Handicap within the Meaning of Mass. Gen. Laws ch. 151B.

As an initial matter, Plaintiff's Opposition fails to raise issues sufficient to preclude dismissal of his claim for violation of Mass. Gen. Laws ch. 151B ("Chapter 151B") because he has not demonstrated that he had a handicap or a perceived handicap. Plaintiff asserts in his Opposition that his "knee injury substantially limited his major life activities of standing, walking, climbing stairs and lifting." (Opp. at 11.) To support this assertion, Plaintiff rests entirely on selected portions of his deposition where he describes the physical effects of his knee injury.[2] Because Plaintiff has not submitted any evidence beyond his own conclusory testimony,

---

[1] As of July 1, 2005, Ethan Allen, Inc.'s name changed to Ethan Allen Retail, Inc.
[2] The pages cited from Plaintiff's deposition transcript reveal that he merely testified that the activities that were difficult or impossible for him to perform while he was feeling the effects of his knee injury were standing and walking for great lengths of time, which he defined to be half an hour to an hour, and climbing. (Def.'s Statement of

such as medical evidence documenting any restrictions or substantial limitations on major life activities that he may have had as a result of his condition, he fails to establish that he was substantially limited in one or more major life activities.  See, e.g., Calef v. The Gillette Co., 322 F.2d 75 (1st Cir. 2003) (merely pointing to a medical diagnosis is not enough to establish a substantial limitation on major life activities); Zades v. Lowe's Home Centers, Inc., 03-30269-MAP, 2006 WL 2563456, at *12 (D.Mass. 2006) (plaintiff's conclusory statement that she was disabled and her description of diagnosis and its physical effects in her deposition was insufficient to establish that she was disabled); Poh v. Massachusetts Correction Officers Federated Union, 03-11987-RWZ, 2006 WL 1877089, at *2 (D.Mass. 2006) (plaintiff did not prove disability, in part, because plaintiff provided no evidence of a substantial limitation on major life activities beyond his own affidavit); Machin-Rodrigeuz v. C & C Partnership Coca Cola Puerto Rico, 03-1746 SEC, 2005 WL 2293574, at *3-4 (D. Puerto Rico 2005) (medical evidence stating diagnosis and treatment, without any specific information as to how said diagnosis substantially affects major life activities, and plaintiff's affidavit were not enough to shoulder summary judgment burden of proving disability).[3]

Furthermore, Plaintiff fails to effectively counter Ethan Allen's argument that an isolated, temporary medical condition such as his torn knee meniscus is not a handicap within the meaning of Chapter 151B.  See Cormier v. Littlefield, 112 F.Supp.2d 196, 198-99 (D.Mass.

---

Undisputed Facts ("SUF"), filed with Def.'s Motion for Summary Judgment, at ¶ 53.)  As for Plaintiff's contention that he was substantially impaired in the major life activity of lifting, this allegation is belied by his testimony that he was able to help deliver a very heavy dresser weighing 200 pounds on his last day of work at Ethan Allen.  (Def.'s SUF at ¶¶ 53, 57.)

[3] Chapter 151B defines "handicap" in a manner "essentially identical" to the federal definition of disability under the Americans with Disabilities Act.  See Dahill v. Police Dep't of Boston, 434 Mass. 233, 237 (2001).  Consequently, courts typically conduct a single analysis for federal and state discrimination claims and regularly find that a plaintiff who cannot prove a substantial limitation of a major life activity is neither disabled within the meaning of the ADA nor handicapped under Chapter 151B.  See Poh, 2006 WL 1877089, at *3.

2000); Hallgren v. Integrated Financial Corp., 42 Mass. App. Ct. 686, 688 (1997). Indeed, he has ignored the numerous cases cited by Ethan Allen in its memorandum supporting its Motion for Summary Judgment in which plaintiffs with the same injury as Plaintiff sustained, and/or who had corrective arthroscopic surgery as he did, were held to not be disabled. See, e.g., Hartwell v. Lifetime Doors, Inc., No. Civ. A. 05-2115, 2006 WL 381685 (E.D.Pa., Feb. 16, 2006) (shoulder injury requiring arthroscopic surgery and physical therapy held not to be a disability because it was not permanent or of long-term duration); Hawrych v. Custom Plastics, Inc., No. 98 C 4848, 2000 WL 33121063 (N.D.Ill., June 5, 2000) (employee who suffered a knee injury, underwent arthroscopic surgery, was medically restricted from performing certain types of work at his job for several months, but who was cleared to work without restrictions fourteen months after initial injury had only a temporary injury rather than a disability); Murray v. Sysco Corp., NO. CIVA96CV1073RSP/DHN, 1998 WL 160826 (N.D.N.Y., Apr. 2, 1998) (torn meniscus, requiring outpatient arthroscopic surgery, had only a transitory effect and was not a disability within meaning of ADA); Kelleher v. Solopak Pharm., Inc., No. 96 C 7743, 1997 WL 610779 (N.D.Ill., Sept. 26, 1997) (knee injury resulting in arthroscopic surgery not a disability); Blanton v. Winston Printing Co., 868 F.Supp. 804 (M.D.N.C., Mar. 22, 1994) (knee injury, a torn medial meniscus, held to be a temporary impairment rather than a disability).

Moreover, the lone case Plaintiff cites to in support of his contention that the temporary nature of his injury does not preclude him from being handicapped within the meaning of Chapter 151B is completely distinguishable from the instant facts. In that case, Keeling v. Wilfert Brothers Realty Co., 22 MDLR 201, 2000 WL 33665360 (2000), the complainant, a maintenance worker, tore a ligament in his knee while he was working. See id. at *3. The injury required "extensive physical therapy," and the complainant "walked with a crutch, a brace and

cane while his injury healed." Id. Because his was a work-related injury, the complainant applied for and received worker's compensation benefits for over three months, and he was on leave from work throughout that time. See id. The complainant introduced medical records regarding his injury at the Massachusetts Commission Against Discrimination ("MCAD") hearing, including a statement from a doctor indicating that he was disabled from his full work duties. See id. Upon his return to work, his doctor placed restrictions on him, prohibiting him from lifting more than thirty pounds and from bending and picking weeds. See 2006 WL 33665360, at * 4. Under these facts, the MCAD concluded that the complainant was handicapped because (1) his physical impairment substantially limited him in one or more of his major life activities; (2) he had a record of such impairment; and, (3) he had sustained a work-related injury and was considered "handicapped" under Chapter 151B pursuant to Mass. Gen. Laws ch. 152, § 75B. See id. Most significantly for purposes of its potential application to this case, the employer in Keeling did not argue that the complainant was not handicapped; therefore, the MCAD never addressed the temporary injury issue presented by Ethan Allen.

Here, by way of contrast, Plaintiff sustained a non-work related knee injury. Consequently, he did not receive worker's compensation benefits and is not considered handicapped by virtue of Mass. Gen. Laws ch. 172, § 75B. Plaintiff did not undergo any physical therapy for his knees before or after his surgery, let alone "extensive" physical therapy, and he never missed work because of his knee injury. (Def.'s SUF at ¶¶ 52, 53.) Plaintiff has submitted no medical records indicating that he was disabled from his full duties as Warehouse Manager, either. Thus, the Keeling case is not only factually inapposite, but also it does not even address Ethan Allen's argument that an isolated, temporary injury such as a torn meniscus requiring arthroscopic surgery is not a handicap within the meaning of Chapter 151B.

Finally, Plaintiff's assertion that the critical inquiry is whether he was handicapped at only one point in time, (see Opp. at 11), lacks common sense. By Plaintiff's reasoning, someone who is terminated with a simple broken arm would be "handicapped" under Chapter 151B because, at the time of the termination, a broken arm could substantially limit, *inter alia*, one's ability to lift. Neither the MCAD's guidelines nor case law suggest that such isolated, temporary medical problems are handicaps or were intended to constitute handicaps, however. See Cormier, 112 F.Supp.2d at 198-99; Hallgren, 42 Mass. App. Ct. at 688; MCAD *Guidelines: Employment Discrimination on the Basis of Handicap* II.A.6 (1998).

Plaintiff's contention that Ethan Allen perceived or regarded him to be handicapped because of his knee injury misses the mark as well. A plaintiff "cannot merely show that his employer perceived him as *somehow* disabled; rather, he must prove that the employer regarded him as disabled *within the meaning of the ADA* [or Chapter 151B]." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002) (emphasis in original). Thus, the evidence that Plaintiff's supervisor, Denna Hamilton, was aware of his knee injury and that he had requested time off for surgery is insufficient to establish that she perceived him to be substantially limited in a major life activity. Hamilton's purported denial of his request for time off and her alleged repeated requests that he postpone his surgery suggest, if anything, that she did *not* believe him to have a substantial limitation in any major life activities. See Zades, 2006 WL 2563456, at *13.

In short, the evidence on which Plaintiff relies is insufficient to establish that he was actually handicapped or that he was perceived by Ethan Allen to have a handicap. Consequently, his Chapter 151B claim merits dismissal in its entirety.

5

II.  <u>Plaintiff Fails to Establish Evidence Sufficient to Establish that Ethan Allen's Reason for Terminating Him was a Pretext for a Retaliatory Motive.</u>

Plaintiff has also failed to adduce evidence sufficient to establish that Ethan Allen's articulated reason for his termination – his chronic tardiness – was a pretext for a retaliatory motive in violation of the Family and Medical Leave Act ("FMLA") or Chapter 151B.

As an initial matter, Plaintiff states or omits facts in a misleading manner throughout his Opposition in an effort to avoid the inescapable conclusion that Ethan Allen's concerns with his tardiness predated his alleged requests for time off because of his knee injury. Ethan Allen submits that this is because "[w]here, as here, adverse employment actions or other problems with an employee predate any knowledge that the employee has engaged in protected activity, it is *not permissible* to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation." <u>Mole v. University of Massachusetts</u>, 442 Mass. 582, 594 (2004) (emphasis added). <u>See also</u> <u>Hodgens v. General Dynamics Corp.</u>, 144 F.3d 151, 170-71 (1st Cir. 1998) (circumstantial fact of temporal proximity between protected activity and adverse employment action weakened considerably by history of plaintiff's poor work performance). For example, Plaintiff claims that the warning he received on July 21, 2003 was unwarranted because he was not scheduled to work that day. (Opp. at 8.) However, the schedule cited in support of this statement indicates that he was, indeed, scheduled to work at Ethan Allen's Quincy location on July 21, 2003, but that he did not arrive until over an hour after his scheduled starting time. (Def.'s SUF at Exhibit J.) The schedule notation, therefore, corroborates the written warning given to him and Hamilton's testimony that he was tardy that day and that she received a call from the Quincy location inquiring as to Plaintiff's whereabouts because he was late. Furthermore, Plaintiff conceded at his deposition that it is possible that he was late on the dates listed in the warning. (Def.'s SUF at ¶ 19.) Thus,

6

Plaintiff's current contention that he was not scheduled to work on July 21, 2003 is completely unfounded and contrary to the evidence.

By way of another example, Plaintiff suggests that the final written warning given to him on October 8, 2003 for tardiness was motivated by an unlawful animus because Hamilton gave him a rating of "3," or "meets requirements" in the "Dependability" category on his annual performance appraisal.  (Opp. at 6.)  However, Plaintiff completely omits any reference to Hamilton's testimony explaining that *when she completed the evaluation back in July 2003*, she gave Plaintiff the benefit of the doubt by giving him a rating of "meets requirements" in the "Dependability" category.  (Def.'s SUF at ¶ 18.)  Plaintiff also conveniently neglects to mention that Ms. Hamilton wrote in the notes section for this category that Plaintiff needed "to be on time for work to set the example for your team."  (Id.)  He also fails to disclose that Hamilton gave him only forty-six of one hundred points on his performance evaluation, which is equivalent to the second-lowest rating of "Needs Improvement."  (Id.)  When Ms. Hamilton met with Plaintiff to review his appraisal on October 8, 2003, she explained that although she had given him a rating of "meets requirements" in the "Dependability" category, she had completed the appraisal back in July.  (Id. at ¶ 21.)  She informed him that his performance had become considerably worse since then.  (Id.)  A full review of the undisputed facts compels the conclusion that Hamilton had been concerned about Plaintiff's tardiness well before he ever allegedly asked for time off due to his knee injury.

As for Plaintiff's contention that he was treated differently than similarly situated employees, his evidence is, again, based on selective or speculative evidence.  Plaintiff asserts that Hamilton had daily discussions only with Plaintiff to check on start times, that she did not check daily the start times of any other direct reports, and that she testified that no one other than

7

Plaintiff was ever late. (Opp. at 7.) Hamilton's actual deposition testimony was that she kept notes on other direct reports with performance issues, and that she randomly checked the start times of her direct reports the same way that she checked on Plaintiff. (Def.'s SUF at Exhibit E at 95-96; Hamilton Dep. at 99-100, attached hereto as Exhibit A.) She also testified that, to her knowledge, none of the other managers reporting to her had the same problems with consistent tardiness as Plaintiff did. (Def.'s SUF at ¶ 36.) Even if Rebecca DesRosiers, a former administrative support employee, personally observed "numerous other managers who reported directly to Ms. Hamilton regularly arrive[] late for work," Hamilton was only at the Franklin Service Center from one and one-half days to three days per week in 2003 (Def.'s SUF at ¶ 7), and there is no indication that DesRosiers ever shared her observations with Hamilton. The only times that Hamilton documented Plaintiff's tardiness incidents were when she personally observed him arriving late, or when he admitted to being late during conversations with her. (Def.'s SUF at ¶ 16.) Furthermore, the Affidavit submitted by DesRosiers is completely lacking any detail to support her conclusory allegation that Hamilton treated Plaintiff "less favorably than her other direct reports" and should be disregarded. Finally, Plaintiff wrote in post-termination e-mails to Ethan Allen's upper management that "*everyone* in the Boston District are [sic] working in fear and for good reason," that "*most employees* in the Boston District are working in fear," that Hamilton would "make your life impossible and subvert any and all efforts to do well," that others were next on "Denna's hit list," and questioned *how many more "good people"* were going to be terminated by Hamilton. See Exhibit B. It is clear that Plaintiff himself did not believe that he was being singled out for disparate treatment by Hamilton. There is no admissible evidence of selective discipline.

The assertion that Ms. Hamilton "manufactured the 'final warning' documents as an excuse to terminate his employment" is another speculative theory that is not borne out by the evidence. In support of this statement, Plaintiff cites only to DesRosier's Affidavit, which states that Hamilton "appeared to be looking for an excuse to terminate his employment." It is significant that DesRosiers left Ethan Allen on September 20, 2003, weeks before the date that Plaintiff received two final written warnings and a month before he was terminated. Thus, she clearly has no personal knowledge as to events that occurred in connection with his final warnings or his termination and is speculating as to Hamilton's motives, just as Plaintiff has been throughout this case.

III.   Plaintiff Cannot Avoid Summary Judgment of His Claim for Denial or Interference with His FMLA Rights.

Plaintiff does not dispute (nor can he) that when an employee needs FMLA leave for planned medical treatment, the employee must make a reasonable effort, in consultation with the employer, to schedule the treatment so as not to unduly disrupt the employer's operations. See 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.302(e). Plaintiff accuses Ethan Allen of disregarding "the statutory mandate that scheduling must always be subject to the approval of the health care provider," (Opp. at 5), yet he never submitted any medical documentation to Ethan Allen indicating that surgery was required immediately or that his doctors did not approve of his October 23, 2003 surgery date. He has no evidence to support that such surgery was needed "as soon as possible" other than his deposition testimony, and there is no evidence indicating that his doctors had set an earlier surgery date which was ignored or changed at Ethan Allen's insistence. Therefore, even crediting Plaintiff's version of events that Hamilton asked him to schedule his surgery after the opening of the new Natick store, this is precisely the type of situation permitted by the regulations. Plaintiff appropriately discussed the timing of his non-emergency surgery

and anticipated leave with Hamilton, and she approved his request for time off for this reason just a few weeks later.  Indeed, such conduct has been held to not constitute unlawful interference under the FMLA.  See, e.g., Krueger v. Speedway Superamerica, LLC, No. Civ. 03-6568 (DSD/JSM), 2005 WL 1475368 (D.Minn., June 22, 2005) (no unlawful interference under the FMLA where plaintiff delayed her surgery by three months because her manager told her at the time of the initial request that it was a bad time for her to take leave and that the store needed a manager).

In addition, Plaintiff's argument that Ethan Allen manipulated the essential functions of his job when Hamilton allegedly stated that he was "too valuable" to the new Natick store opening to take leave FMLA leave until after it opened is utterly lacking in merit.  (Opp. at 5.) Plaintiff readily admitted at his deposition that he could understand Hamilton's alleged position. (Def.'s SUF at ¶ 42.)  When asked at his deposition to elaborate why he understood, Plaintiff testified that the Warehouse was then shipping out between $300,000 and $500,000 of products, and "No one knew it better than [him] in the building."  (Id.)  Furthermore, Plaintiff's regular job description includes responsibilities such as managing the "receiving, storing and loading of furniture and accessories by warehouse workers in accordance with company procedures" and coordinating the "transfer of inventory of supplies to the store," (Id. at Exhibit D), which were involved with the Natick store's opening.   His FMLA claim should be dismissed.

IV. Plaintiff Fails to Adduce Sufficient Evidence to Overcome Dismissal of His Claim for Violation of the Massachusetts Workers' Compensation Act, Mass. Gen. Laws ch. 152, §§ 75A, 75B.

Plaintiff has not produced sufficient evidence to avoid dismissal of his Worker's Compensation Act ("WCA") claim, either.  He has no admissible evidence to refute Hamilton's testimony that the termination decision was made before she saw him on October 20, 2003, when he purportedly disclosed that he had hurt his back making a delivery that morning.

Consequently, even if such a disclosure were protected activity within the meaning of the WCA, which Ethan Allen denies, there was no causal connection between his disclosure and his termination.  Moreover, his current assertion that his November 10, 2003 e-mail to Khusro Elley constituted a re-application for employment pursuant to Mass. Gen. Laws ch. 152, § 75A is absurd.  His response to Ethan Allen's interrogatory asking him to identify the persons with whom he had made any formal or informal applications or inquiries for employment does not identify Elley or Ethan Allen, (see Exhibit C at 4), and the e-mail to Elley plainly reflects the ruminations of an angry former employee rather than an application for a particular job.  See Exhibit B.  In short, his WCA claim merits dismissal.

## CONCLUSION

For these reasons, as well as those set forth in the initial Memorandum of Law in Support of Defendant's Motion for Summary Judgment and other supporting papers, Ethan Allen's Motion for Summary Judgment should be granted in its entirety.

Respectfully submitted,

ETHAN ALLEN INC.

/s/: Heather C. Krauss_____
Barry A. Guryan, BBO # 214920
bguryan@foley.com
Heather C. Krauss, BBO # 644457
hkrauss@foley.com
FOLEY & LARDNER LLP
111 Huntington Avenue
26th Floor
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001

Dated:  October 24, 2006

## **CERTIFICATE OF SERVICE**

  I, Heather C. Krauss, hereby certify that on October 26, 2006, a true copy of the foregoing document was served electronically upon counsel for Plaintiff:

Denise A. Chicoine, Esq.
Englander & Chicoine, P.C.
Two Newton Place
Suite 200
Newton, MA  02458-1634

                 /s/: Heather C. Krauss_____
                 Heather C. Krauss