UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL F. ELDRIDGE, | ) | Civil Action 04 12506 MEL |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ETHAN ALLEN, INC. | ) | |
| Defendant | ) | |

**PLAINTIFF MICHAEL F. ELDRIDGE'S MEMORANDUM OF LAW
IN SUPPORT OF OPPOSITION TO
DEFENDANT ETHAN ALLEN INC.'S MOTION TO STRIKE**

NOW COMES Plaintiff Michael F. Eldridge to oppose Defendant Ethan Allen Inc.'s Motion to Strike Portions of the Affidavit of Rebecca Desrosiers. In support, Plaintiff submits the following memorandum of law.

**ARGUMENT**

I.  **The Motion to Strike Must Be Denied Because Defendant Made a "Strategic Decision" Not to Depose Its Former Employee After Mr. Eldridge Disclosed All Required Information.**

Mr. Eldridge has fully complied with his discovery obligations in this matter. Pursuant to Fed.R.Civ.P. 26(a), on November 1, 2005 Mr. Eldridge disclosed that "any member of Ethan Allen's Human Resources Department involved with processing Plaintiff's FMLA paperwork in 2003" may have discoverable information pertaining to Mr. Eldridge's claims. Ms. Desrosiers was the Human Resources representative who reported directly to Mr. Eldridge's supervisor, Denna Hamilton. *See* Exhibit 1, Deposition of Denna Hamilton, pp. 33, 40. Furthermore, Ms. Hamilton communicated directly with Ms. Desrosiers about Mr. Eldridge's scheduled knee surgery. *Id.* at p. 135.

1

Thus, Ethan Allen was on notice beginning November 1, 2005 that Ms. Desrosiers, as a member of the Human Resources Department who was intimately involved with Mr. Eldridge's request for FMLA leave, possessed information relevant to Mr. Eldridge's claims.

Months before the close of discovery, Mr. Eldridge responded to Ethan Allen's Interrogatory Number 2 that he expected to call Ms. Desrosiers as a fact witness and that she would testify about his application for FMLA leave. This answer constituted a supplement to Mr. Eldridge's initial disclosures. *See* Fed. R. Civ. P. 26(e)(1). Mr. Eldridge was not required to further supplement this interrogatory answer because it was neither incorrect nor incomplete. All of the information in the affidavit relates to Mr. Eldridge's application for FMLA leave, detailing Ms. Desrosiers' interactions with Mr. Eldridge and his supervisor before and after Mr. Eldridge's FMLA leave request.

Ethan Allen's contention that Mr. Eldridge was required to disclose the specific detail in Ms. Desrosiers' affidavit is entirely without merit. At Mr. Eldridge's deposition, the appropriate questions were not asked to elicit the information Ethan Allen now seeks to strike. Counsel limited her inquiries to Ms. Desrosiers' role regarding Mr. Eldridge's application for FMLA leave. Further, Mr. Eldridge cannot be charged with knowledge of other witnesses' observations and opinions, as he could not competently testify to what Ms. Desrosiers may have perceived. Ethan Allen was on notice that Ms. Desrosiers was a designated fact witness with whom Mr. Eldridge interacted on a daily basis after his knee injury and simply failed to investigate the underlying facts.

Ethan Allen cannot in good faith assert that it is either prejudiced or surprised by Ms. Desrosiers' testimony. *See Licciardi v. TIG Ins. Group*, 140 F.3d 357, 363-365 (1st

Cir. 1998) (in determining whether testimony of expected witness should be barred key factors are prejudice and surprise suffered by opposing party). Ethan Allen admits it considered and then declined the opportunity to directly question Ms. Desrosiers when it "made the strategic decision not to depose Desrosiers during discovery." Defendant's Motion to Strike, p. 5. It was Ethan Allen's own assumption that Ms. Desrosiers' duties were "purely ministerial." *Id.* This voluntary decision to remain ignorant of information possessed by its own former employee precludes Ethan Allen from asserting either prejudice or surprise.

On a final note, the case at bar is distinguishable from all of the cases to which Ethan Allen cites in support of its position that portions of Ms. Desrosiers' affidavit must be stricken because of Mr. Eldridge's alleged failure to disclose. Specifically, all of the cases cited by Ethan Allen, with the exception of one, relate to a party's failure to disclose the identity of an expert, the substance and basis of the expert's testimony, or the expert's qualifications. *See Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10 (1st Cir. 2001)(plaintiff produced two videotapes, prepared by expert witnesses, re-enacting the injury producing accident months after the close of discovery); *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49 (1st Cir. 2001)(defendant's failure to identify expert until after defendant moved for summary judgment deprived plaintiff of opportunity to depose expert, challenge credentials, and conduct relevant discovery). In the last case upon which Ethan Allen relies, an affidavit was stricken because of the total failure to disclose the identity of the witness or anything about the anticipated testimony. *Sears, Roebuck & Co. v. Goldstone & Sudalter, P.C.*, 128 F.3d 10 (1st Cir. 1997). Here, Ms. Desrosiers is not an expert witness, and it is undisputed that Mr. Eldridge disclosed her

identity and the subject matter of her testimony. Plaintiff has not violated any rule governing the conduct of discovery or otherwise. Consequently, Ethan Allen's Motion to Strike on this ground must be denied.

II.  **The Motion to Strike Must Be Denied Because All of the Statements in Ms. Desrosiers' Affidavit Are Relevant, Stated of Her Own Personal Knowledge, and Neither Conclusory Nor Speculative.**

A.  Paragraph 10

Similarly, Ethan Allen's request that paragraph 10 of Ms. Desrosiers affidavit be stricken on the grounds that it is irrelevant must be denied. Specifically, Ms. Desrosiers' testimony that numerous other managers who reported to Hamilton regularly arrived late is directly relevant to Mr. Eldridge's assertion that he was the subject of disparate treatment, and it challenges the credibility of Hamilton's testimony to the contrary. Ethan Allen's assertion that Ms. Desrosiers' observations are irrelevant because she did not discuss them with any member of Ethan Allen management is completely baseless because Ethan Allen cannot establish that she had an affirmative duty to do so. Moreover, Ms. Desrosiers' statement in paragraph 10 is permissibly based upon the scope of her duties at Ethan Allen and her personal observations. Ms. Desrosiers' statement that Mr. Eldridge would stay late in the event that he arrived later than his scheduled start time is relevant to Mr. Eldridge's argument that attendance strictly according to schedule was not an essential function of his position. It is further relevant because it forms the basis of Ms. Desrosiers' opinion that Mr. Eldridge was a dedicated manager. Thus, there is no valid reason to strike paragraph 10.

B. <u>Paragraph 11</u>

Ethan Allen's request that paragraph 11 of Ms. Desrosiers affidavit be stricken on the grounds that she lacks sufficient personal knowledge to make the statements contained therein must also be denied. Paragraph 11 is sufficient on its face, as based on Ms. Desrosiers' observations while working at the same facility as Mr. Eldridge. Whether or not Ms. Desrosiers was a member of management, she was capable of forming an opinion about Mr. Eldridge's interaction with his subordinates and work habits. Ethan Allen's conjecture that Ms. Desrosiers did not have sufficient opportunity to "effectively evaluate" Mr. Eldridge as a manager is a theory about the weight to be given this evidence and not its admissibility. Defendant's Motion to Strike, p. 6-7. Therefore, the appropriate venue to challenge this evidence is on cross-examination, not a motion to strike.

C. <u>Paragraph 12</u>

Paragraph 12 of Ms. Desrosiers' affidavit falls within the requirements of Fed. R. Civ. P. 56(e). While Ms. Desrosiers was not employed at the time of Mr. Eldridge's termination, Ms. Desrosiers had the requisite personal knowledge, based upon conversations with Mr. Eldridge and his supervisor, and her observation of the interaction between the two, to form a personal opinion about the events leading up to Mr. Eldridge's termination. Therefore, Ms. Desrosiers' statement meets the requirements of Fed. R. Civ. P. 56(e) and gives rise to a genuine issue of material fact concerning the real reason for which Mr. Eldridge was terminated and it is therefore competent evidence to be weighed by the Court on summary judgment. As a result, Ethan Allen's Motion to Strike must be denied.

## CONCLUSION

The motion to strike must be denied because Defendant is estopped from asserting it is prejudiced by information that was within its reach during the discovery period. Defendant must bear the consequences of its own strategic decision not to depose the affiant whose identity and anticipated testimony had been provided to Defendant months prior to the close of discovery.

Respectfully submitted,
Michael F. Eldridge

By his attorneys,

Date:   October 30, 2006

Edward S. Englander (BBO # 154540)
Denise A. Chicoine (BBO # 564152)
ENGLANDER & CHICOINE P.C.
Two Newton Place, Suite 200
Newton, MA 02458-1633
Tel. (617) 964-5400

## CERTIFICATE OF SERVICE

I, Denise A. Chicoine, hereby certify that I served the enclosed

**PLAINTIFF'S OPPOSITION TO DEFENDANT ETHAN ALLEN INC.'S MOTION TO STRIKE**

on counsel of record by sending a true copy of same to:

Barry A. Guryan, Esq.
Heather C. Krauss, Esq.
Foley & Lardner LLP
111 Huntington Avenue, 26th Fl.
Boston, MA 02199

via electronic delivery this thirtieth day of October, 2006.

Denise A. Chicoine, Esq.

# EXHIBIT

# 1

1

 ORIGINAL

VOLUME: I
PAGES: 1 through 213
EXHIBITS: See Index

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MICHAEL F. ELDRIDGE,        )
       Plaintiff,   )
                        ) Civil Action
   VS.                      ) No. 04-12506-MEL
                        )
ETHAN ALLEN, INC.,          )
       Defendant.    )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEPOSITION OF DENNA A. HAMILTON**, a witness called on behalf of the Plaintiff, taken pursuant to the provisions of the Federal Rules of Civil Procedure, before Kathleen M. McHugh, a Registered Professional/Certified Shorthand Reporter (#120093) and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Englander & Chicoine, P.C., Two Newton Place, Newton, Massachusetts, on Thursday, April 27, 2006, commencing at 10:06 a.m.

COPLEY COURT REPORTING
101 Tremont Street
Boston, Massachusetts 02108
(617) 423-5841

1  direct supervision?
2  A.  Erin was a direct report into me and
3  she talked to me about it and I told her that she
4  needed to contact human resources.  I gave her the
5  contact name and get the paperwork filled out and
6  she did all that and I followed up with her on
7  it.
8  Q.  And was that similar to what you did
9  for the employees?
10 A.  Jack worked through one of the -- I
11 have, like, HR, like, an HR rep in my office and
12 so he worked through her and she kept me in the
13 loop what was going on with Jack.
14 Q.  Who's the HR rep in your office today?
15 A.  Today?
16 Q.  Yes.
17 A.  Today is Sue Estrella.
18 Q.  Who was it in 2003?
19 A.  Becky DesRosiers.
20 Q.  Is Jack still employed by Ethan Allen?
21 A.  Yes.
22 Q.  Is Erin Milan still employed by Ethan
23 Allen?
24 A.  No.

40

1    Q.    Were there other employees at Ethan
2  Allen that you worked with on this revised policy
3  in 2003?
4         MS. KRAUSS:  Objection.
5    A.    Yes.
6    Q.    And who were those other employees?
7    A.    Becky, a person that reported in to
8  myself, and a few managers that I sent it out to
9  to ask for what their input would be, and I don't
10 remember who I sent it to.
11   Q.    When you reference Becky, is that the
12 woman you said before, DesRosiers?
13   A.    Yes.
14   Q.    And other managers whose names you
15 don't recall right now?
16   A.    Mm-hmm.
17   Q.    And once this revised attendance policy
18 was distributed, was there the expectation that
19 each of the managers would follow the steps in
20 that policy?
21        MS. KRAUSS:  Objection.
22   A.    The managers would follow it and they
23 would have meetings with their employees to
24 discuss what the expectation was as well and the

                                                               135

1       A.      I'm sorry.  Did you say receive or
2  send?
3       Q.      Both, send or receive?
4       A.      No, not to my recollection.
5       Q.      Did you ever send or receive any
6  e-mails with the human resource department in 2003
7  regarding Mr. Eldridge's surgery for his knees?
8       A.      No, not to my recollection.
9       Q.      The note that you received about
10 Mr. Eldridge's surgery you said you provided to
11 Becky DesRosiers?
12      A.      Yes.
13      Q.      Do you recall how you gave it to her?
14      A.      Either I handed it to her or put it on
15 her desk.
16      Q.      Was there any follow-up e-mail with
17 Becky DesRosiers about the surgery Mr. Eldridge
18 had scheduled in October?
19      A.      Can you clarify?  To me?  Where to?
20      Q.      Did you send or receive any e-mail with
21 Becky DesRosiers regarding Mr. Eldridge's surgery
22 in October, 2003?
23      A.      No, not to my recollection.
24      Q.      And you stated that there was some type